In re Sharon H. KUGLER, Debtor.

Michelle HILDEBRAND, and State Farm Insurance Company, as subrogee of Michelle Hildebrand, Plaintiffs,

v.

Sharon H. KUGLER, a/k/a Sharon H. McGee, Defendant.

Bankruptcy No. 93–12695–AB.

Adv. No. 93–1278.

United States Bankruptcy Court, E.D. Virginia, Alexandria Division.

July 29, 1994.

---

Benjamin M. Smith, III, Brault, Palmer, Grove, Zimmerman, White & Mims, Fairfax, VA, for Hildebrand and State Farm.

Robert B. Easterling, Easterling & Goodall, Stafford, VA, for Kugler.

## MEMORANDUM OPINION

MARTIN V.B. BOSTETTER, Jr., Chief Judge.

The plaintiffs, Michelle Hildebrand and State Farm Insurance Company ("State Farm"),[1] have moved for summary judgment,

---

1. Although the pleadings and memoranda refer to State Farm as "State Farm Insurance Company," the supporting documents reveal that the proper and formal name of the insurer herein is "State Farm Mutual Automobile Insurance Company." State Farm asserts that it is a party-in-interest here as a result of paying $108,750 to Hildebrand under an insurance policy issued to Hildebrand's mother. State Farm claims that, upon payment, it became subrogated to the rights of Hildebrand against Kugler for that amount. The debtor, Sharon H. Kugler, has not

asking this Court to except their claims from discharge under 11 U.S.C. § 523(a)(9). In response, the debtor, Sharon H. Kugler, has cross-moved for summary judgment. For the reasons that follow, we deny both the plaintiffs' motion for summary judgment and the debtor's cross-motion for summary judgment.

## I.

On February 25, 1987, Kugler was driving home from work and was accompanied by two passengers, Hildebrand and Calvin Newton, when her car collided with a locomotive, killing Newton and injuring Hildebrand. Kugler was taken to a hospital, and was given a drug-urine screen approximately two hours after the accident. A laboratory report setting forth the results of the drug-urine screen shows that Kugler tested positive for amphetamine and methamphetamine (amphetamines), cocaine metabolite, phencyclidine (PCP), and cannarinoid (marijuana). Ex. 2.[2]

As a result of the accident, the Commonwealth of Virginia charged Kugler with reckless driving in violation of Va.Code § 46.1–189, and with driving while intoxicated in violation of Va.Code § 18.2–266. Kugler pleaded guilty to the reckless driving charge. The Commonwealth of Virginia then entered a *nolle prosequi*, dismissing the charge of driving while intoxicated.[3]

Subsequently, Hildebrand instituted a negligence action against Kugler in the Circuit Court of Stafford County, Virginia. As permitted by the Virginia rules of procedure, Hildebrand's motion for judgment sets forth a general allegation of negligence;[4] in other words, the motion contains no specific allegation that Kugler was driving under the influence of drugs or alcohol when the accident occurred. In response, Kugler filed a grounds of defense[5] denying negligence on her part and asserting the defenses of contributory negligence and assumption of the risk. A few months later, Kugler's attorney withdrew from the case, and there is no indication that Kugler obtained new counsel.

At a deposition that took place after her attorney withdrew, Kugler admitted to smoking marijuana on a daily basis around the time of the accident. Ex. 5, at 13. According to Kugler, Hildebrand also smoked marijuana and was aware that Kugler used marijuana daily. *Id.* Kugler testified further that using marijuana made her feel "laid back," "very relaxed," and also made her "slower." *Id.* Kugler did not recall whether she consumed alcohol, marijuana, or any other drug on the date of the accident, but did testify that she "assumed" she used marijuana on the date of the accident because she ordinarily smoked it at lunch and while commuting to and from work. *Id.* at 23. Finally, Kugler said she consumed amphetamines and marijuana on the night before the accident. *Id.* at 24.

Following the deposition, Hildebrand filed a motion in limine asking the state court to suppress the deposition statements made by Kugler. The motion in limine asserted that the deposition statements and "similar state-

---

contested State Farm's participation in this proceeding.

**2.** The exhibits designated by numbers are those submitted by Hildebrand and State Farm, and the exhibits designated by letters are the ones submitted by Kugler. Also, the *numbered* exhibits cited in this opinion refer to those attached to Hildebrand's and State Farm's initial memorandum, and not to those attached to their reply memorandum.

**3.** The Commonwealth apparently moved to dismiss the charge in order to comply with Va.Code § 19.2–294.1 (Michie 1990), which provides:

Whenever any person is charged with a violation of § 18.2–266 [driving under the influence] ... and reckless driving growing out of

the same act or acts and is convicted of one of these charges, the court shall dismiss the remaining charge.

For further discussion of section 19.2–294.1 in this opinion, see *infra* part II.B.

**4.** A "motion for judgment," not a "complaint," initiates an action at law in the Virginia courts. *See* Va. Sup.Ct. R. 3:3(a). Also, absent an order requiring a bill of particulars to be filed, a motion for judgment may set forth a general allegation of negligence. *See* Va. Sup.Ct. R. 3:16(b).

**5.** "Virginia procedure does not recognize an 'answer' to a motion for judgment. Rather, the proper pleading is a 'grounds of defense.'" *Dual & Assocs., Inc. v. Wells*, 241 Va. 542, 545 n. 3, 403 S.E.2d 354 (1991); *see also* Va. Sup.Ct. R. 3:7.

ments by [Kugler] or any other witness are not relevant to the issues in this action, or if slightly relevant, the relevance is outweighed by the prejudice to" Hildebrand. Ex. D. Although a hand-written notation, marked by the state-court clerk as a "copy teste," indicates that the state court granted the motion in limine, the record before us contains no written order memorializing the state court's decision. *See* Ex. E (hand-written notation).

After she moved to suppress the deposition statements, Hildebrand filed requests for admission, asking Kugler to admit *inter alia* the following statement:

> On February 25, 1987, at the time of the accident alleged ... the Defendant, Sharon [Kugler], was under the influence of alcohol, a narcotic drug or some other self-administered intoxicant or drug to a degree which impaired her ability to drive and operate her motor vehicle safely.

Ex. 6, ¶ 3. Although the sheriff attempted to serve the requests for admission upon Kugler, there is no indication that Kugler received the requests for admission or responded to them. *See* Ex. 8, at 2.

Hildebrand then made at least two attempts to notify Kugler at her last-known address that Hildebrand intended to move for summary judgment "based upon the Pleadings, the Request for Admissions and other evidence to be presented to the Court...." *See* Ex. 7. The notices, however, were returned to Hildebrand by the sheriff who certified that Kugler "could not be found." Ex. G & H.

Observing that Kugler had failed to inform the court of her whereabouts, and that she had failed to respond to Hildebrand's requests for admission, the Circuit Court of Stafford County, Virginia, entered judgment against Kugler in the amount of $500,000 plus interest. The judgment order prepared by Hildebrand's counsel and entered by the state court made the following finding:

> [T]he Court ... finds *upon evidence presented* that the Defendant, Sharon [Kugler], on February 25, 1987, at the time of the accident alleged ... was under the influence of alcohol, a narcotic drug, or some other self-administered intoxicant or drug to a degree which impaired her abili-

ty to drive and operate her motor vehicle safely....

Ex. 8, at 2 (state court's hand-written insertion emphasized). No appeal was taken from this judgment order.

Kugler subsequently petitioned this Court for relief under Chapter 7 of the Bankruptcy Code. Hildebrand and State Farm filed a complaint, asking this Court to (1) except the judgment debt from discharge under 11 U.S.C. § 523, and (2) deny Kugler a discharge under 11 U.S.C. § 727. Count I of the complaint, which asserts a claim under § 523(a)(9), alleges that, at the time of the accident, Kugler was driving "under the influence of alcohol, narcotics, or some other substance" that impaired "her ability to operate her motor vehicle safely...." Complaint ¶ 7. In her answer, Kugler denies that she operated her car while driving under the influence. Answer ¶ 5. The parties have cross-moved for partial summary judgment on the § 523(a)(9) count.

## II.

Hildebrand and State Farm seek to except their claims from discharge pursuant to § 523(a)(9), which provides that:

> (a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt....
>
> ....
>
> (9) for death or personal injury caused by the debtor's operation of a motor vehicle if such operation was unlawful because the debtor was intoxicated from using alcohol, a drug, or another substance....

11 U.S.C. § 523(a)(9). "Congress sought three objectives when it adopted § 523(a)(9): (1) to deter drunk driving; (2) to ensure that those who caused injury by driving drunk did not escape civil liability through the bankruptcy laws; and (3) to protect victims of drunk driving." *Lugo v. Paulsen,* 886 F.2d 602, 610 (3d Cir.1989) (quoting *Stackhouse v. Hudson (In re Hudson),* 859 F.2d 1418, 1423 (9th Cir.1988)). The key, of course, for obtaining a nondischargeable claim under § 523(a)(9) is proof that the claim arose when

the debtor was operating a motor vehicle while intoxicated.

### A.

To resolve the issue of intoxication, Hildebrand and State Farm point to the judgment entered by the Circuit Court of Stafford County, Virginia. Included in the judgment order is a finding by the state court that Kugler was driving while intoxicated at the time of the accident. Hildebrand and State Farm contend that the state court's finding of intoxication collaterally estops Kugler from disputing the issue of intoxication in this proceeding. Hildebrand and Kugler further argue that collateral estoppel and the full faith and credit statute, 28 U.S.C. § 1738, prohibit us from looking beyond the state-court judgment, and require us to determine that their claims are nondischargeable. Kugler asserts, in response, that collateral estoppel does not attach because the parties involved in the negligence action did not litigate the issue of intoxication.

■ The full faith and credit statute provides that state "judicial proceedings ... shall have the same full faith and credit in every court within the United States ... as they have by law or usage in the courts of such [s]tate ... from which they are taken." 28 U.S.C. § 1738.[6] "Section 1738 requires federal courts to give the same preclusive effect to state court judgments that those judgments would be given in the courts of the State from which the judgments emerged." *Kremer v. Chemical Constr. Corp.,* 456 U.S. 461, 466, 102 S.Ct. 1883, 1889, 72 L.Ed.2d 262 (1982) (footnote omitted). Accordingly, § 1738 requires a federal court "to refer to the preclusion law of the State in

which judgment was rendered," *Marrese v. American Academy of Orthopaedic Surgeons,* 470 U.S. 373, 380, 105 S.Ct. 1327, 1331, 84 L.Ed.2d 274 (1985), which in this instance is the law of Virginia. *See Haring v. Prosise,* 462 U.S. 306, 312–16, 103 S.Ct. 2368, 2372–74, 76 L.Ed.2d 595 (1983) (applying Virginia law to determine the preclusive effect of a prior Virginia court judgment). If the federal court decides that a prior state-court judgment precludes litigation of a particular claim or issue, the federal court may then consider whether federal law carves out an exception to the full faith and credit statute. *See Marrese,* 470 U.S. at 382–83, 105 S.Ct. at 1332–33; *Crain v. Limbaugh (In re Limbaugh),* 155 B.R. 952, 956 (Bankr.N.D.Tex. 1993). We turn first to the law of Virginia to determine whether, in this proceeding, collateral estoppel attaches.[7]

■ Under Virginia law, collateral estoppel precludes further litigation of an issue in a subsequent proceeding when that issue was *actually litigated,* and its resolution was essential to a valid, final, and personal judgment rendered in a prior proceeding. *See Norfolk & W. Rwy. Co. v. Bailey Lumber Co.,* 221 Va. 638, 640, 272 S.E.2d 217 (1980); *Bates v. Devers,* 214 Va. 667, 671, 202 S.E.2d 917 (1974); *see also Reid v. Ayscue,* 246 Va. 454, 456–57, 436 S.E.2d 439 (1993) (setting forth three elements necessary for invoking collateral estoppel). Moreover, "[i]n Virginia, the established rule is that collateral estoppel requires mutuality, especially when the estoppel is used 'offensively.'" *Bailey Lumber,* 221 Va. at 641, 272 S.E.2d 217 (citations omitted). This generally means that "a litigant is ... prevented from invoking the preclusive force of a judgment unless

**6.** By its terms, the Full Faith and Credit Clause of the United States Constitution requires each state to recognize the public acts, records and judicial proceedings of every other state. *See* U.S. Const. art. IV, § 1. It is only through the statutory mandate of § 1738 that federal courts are required to give full faith and credit to state-court judgments. *See Berkfield v. Goodman (In re Goodman),* 25 B.R. 932, 935 (Bankr.N.D.Ill. 1982).

**7.** In *Grogan v. Garner,* 498 U.S. 279, 284 n. 11, 111 S.Ct. 654, 658 n. 11, 112 L.Ed.2d 755 (1991), the United States Supreme Court held that collateral estoppel or "issue preclusion" ap-

plies in dischargeability proceedings. A doctrine related to collateral estoppel is res judicata, which is also known as "claim preclusion." In *Brown v. Felsen,* 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979), the United States Supreme Court determined that a prior state-court judgment does not have res judicata effect in dischargeability proceedings before a bankruptcy court. *Id.* at 138–40, 99 S.Ct. at 2212–13; *see also Hovermale v. Pigge (In re Pigge),* 539 F.2d 369, 372–73 (4th Cir.1976). None of the parties here has asserted res judicata, so we need not address it any further.

he would have been bound had the prior litigation of the issue reached the opposite result." *Dual & Assocs., Inc. v. Wells*, 241 Va. 542, 545, 403 S.E.2d 354 (1991) (quoting *Bailey Lumber*, 221 Va. at 640, 272 S.E.2d 217). Because the parties here have not contested mutuality, we assume without deciding that mutuality of estoppel exists vis-a-vis State Farm (as partial subrogee of Hildebrand) and Kugler.

We thus turn to the "actually litigated" element of collateral estoppel. As we indicated earlier, Kugler contends that the issue of her intoxication was never litigated because (1) the state-court pleadings did not raise the issue, and (2) the issue was not litigated when Kugler was involved in the state-court action.

The Supreme Court of Virginia addressed the "actually litigated" element of collateral estoppel in *Snead v. Bendigo*, 240 Va. 399, 397 S.E.2d 849 (1990). There, a physician sued his former patient to collect on an unpaid medical bill. Although the physician filed a pleading accompanied by a verified statement of account, the patient filed no documents in response. *Id.* at 400, 397 S.E.2d 849. At a hearing, the trial court asked the patient if he owed the money claimed by the physician, and the patient replied that he did not believe he owed the physician because the physician's treatment had "done [the patient] more damage ... than good." *Id.* (quoting the patient's testimony). The trial court nevertheless entered judgment against the patient. A few months later, the patient sued the physician on grounds of medical malpractice. As a defense, the physician asserted that the judgment rendered in the first action collaterally estopped the issue of negligence in the malpractice suit. *Id.* at 401, 397 S.E.2d 849. The Supreme Court of Virginia, however, rejected the collateral estoppel defense, reasoning that the patient had filed neither a denial nor a counterclaim based on negligence in the first action. *Id.* at 402, 397 S.E.2d 849. Therefore, said the court, negligence had not been put in issue, so the issue

of negligence had not been "actually litigated" in the first action. *Id.* Instead, the judgment rendered in the first action "was in the nature of a default." *Id.; see also* Restatement (Second) of Judgments § 27 cmt. e (1980) ("In the case of a judgment entered by confession, consent, or default, none of the issues is actually litigated.").[8]

The Court of Appeals for the Fourth Circuit also addressed the "actually litigated" element in *M & M Transmissions, Inc. v. Raynor (In re Raynor)*, 922 F.2d 1146 (4th Cir.1991). Although *Raynor* dealt with a judgment rendered by a North Carolina court, it nevertheless addressed a situation that is factually similar to the instant case, so it is instructive. In *Raynor*, a creditor sued the debtor in state court before the debtor had filed a bankruptcy petition. The debtor's attorney neither made an appearance nor filed an answer in the state-court action. *Id.* at 1147. On the day of the trial, the debtor's attorney withdrew, leaving the debtor with no notice of the trial nor representation by counsel. *Id.* Without the benefit of the debtor's presence, the state court entered judgment against the debtor based on written findings that detailed facts showing fraud. *Id.* at 1150 (Niemeyer, J., dissenting). The state court's findings, however, had been prepared by the creditor's attorney. *Id.* at 1149. After the debtor petitioned for bankruptcy relief, the creditor instituted an adversary proceeding in which fraud was an issue. *See id.* at 1147. The Court of Appeals for the Fourth Circuit concluded, however, that the state-court judgment did not foreclose litigation on the fraud issue, reasoning that the issue of fraud had not been actually litigated in the state-court action because (1) the debtor had not been aware of the trial, (2) creditor's counsel had prepared the state court's findings, and (3) the state-court record contained no transcript of the evidence or depositions. *Id.* at 1149.

■ Applying *Snead* and *Raynor*, we conclude that the issue of intoxication was not "actually litigated" in the state-court action. As in *Snead*, intoxication was not put in issue

---

8. *Accord Cowher's Trucking, Inc. v. Zack (In re Zack)*, 99 B.R. 717, 718 n. 4 (Bankr.E.D.Va.1989) (indicating that a default judgment does not meet

the "actually litigated" element of collateral estoppel); *Feggins v. Booker*, 28 Va.Cir. 461, 462 (Cir.Ct.1992) (same).

in the Virginia action. The pleadings filed in the Virginia action assert only general allegations and denials regarding negligence, not intoxication. As in *Raynor*, there is no indication that Kugler was either served or aware of Hildebrand's requests for admissions and motion for summary judgment filed in the state-court action. Moreover, Hildebrand's counsel prepared the judgment order that included the finding of intoxication. The state court's judgment was thus not a product of contested litigation, but was in the nature of a default.

In response, Hildebrand and State Farm contend that Kugler's deposition statements did place intoxication in issue. Yet Hildebrand sought to suppress those statements when she filed her motion in limine with the state court. Hildebrand and State Farm imply that the state court never acted upon the motion; in their reply memorandum, Hildebrand and State Farm assert that

the [state] court did not rule on Michelle Hildebrand's motion in limine at the time the motion was argued and decided to *refrain from ruling* on the motion until the date of trial. There is no order in the State Court file evidencing that the court granted or denied Hildebrand's motion in limine.[9]

This does not necessarily contradict Kugler's position that the state court *eventually* granted the motion in limine.[10] Indeed, Kugler has submitted a hand-written notation, marked as a "copy teste" by the state-court clerk, indicating that the motion in limine was granted. *See* Ex. E. Accordingly, even if intoxication was initially put in issue during Kugler's deposition, those statements were effectively expunged from the state-court record when Hildebrand filed, and the state court granted, the motion in limine. The state court's granting of the motion in limine thus prevented those statements from being *submitted* to a trier of fact. *See Santopadre v. Pelican Homestead & Sav. Ass'n*, 937 F.2d 268, 273 (5th Cir.1991) (stating that a question of fact has been "actually litigated" when

it has been "put in issue by the pleadings, and is *submitted* to the [trier of fact] for its determination, and is determined...." (emphasis added)).

Nevertheless, it could be argued that the requests for admission filed by Hildebrand in the state action raised the issue of intoxication. We find, however, that the requests did not put intoxication in issue because there is no indication in the record that the requests were served on Kugler, or that Kugler denied she was intoxicated.

Furthermore, the circumstances surrounding the requests for admission bolster our conclusion that the "actually litigated" element of collateral estoppel is unsatisfied. As stated above, there is no indication that Kugler received or responded to Hildebrand's requests. Because she failed to respond, the state court deemed the request to be admitted by Kugler. *See* Va. Sup.Ct. R. 4:11(a). It appears that the state court's finding of intoxication was based solely on Kugler's "admission" because the language of the court's finding is virtually identical to the language set forth in Hildebrand's requests for admission. Yet a fact that is deemed admitted has little effect in a subsequent proceeding, such as this, because of a Virginia discovery rule providing that "[a]ny admission made by a party under this Rule is for the purpose of the pending action only and is not an admission by him for any other purpose nor may it be used against him in any other proceeding." Va. Sup.Ct. R. 4:11(b).

Hildebrand and State Farm contend that even if a Rule 4:11 admission has little effect in this proceeding, we still should give full faith and credit to a *judgment* based on such an admission. No party has cited, nor have we found, a Virginia case construing Rule 4:11(b) to determine the effect of a judgment based solely on a Rule 4:11 admission. Accordingly, we look to decisions rendered outside this jurisdiction to guide our analysis.

9. Plaintiffs' Reply to Defendant's Response to Plaintiff's [sic] Motion for Summary Judgment and Response to Defendant's Cross–Motion for Summary Judgment ¶ 3.

10. *See* Memorandum in Support of Defendant's Response to Plaintiffs' Motion for Summary Judgment and Cross–Motion for Summary Judgment at 3.

In *In re Cassidy*, 892 F.2d 637 (7th Cir.), *cert. denied*, 498 U.S. 812, 111 S.Ct. 48, 112 L.Ed.2d 24 (1990), the Court of Appeals for the Seventh Circuit addressed a similar issue with respect to Tax Court Rule 90, which is equivalent to Federal Rule of Civil Procedure 36 and Virginia Rule 4:11.[11] The dispute in *Cassidy* arose in the Tax Court when the Internal Revenue Service ("IRS") alleged that a bankruptcy debtor had filed fraudulent tax returns. *Cassidy*, 892 F.2d at 638. The Tax Court then entered judgment against the debtor based on allegations of fraud that were deemed admitted under Tax Court Rule 90. *Id.* at 639. In a subsequent bankruptcy proceeding, the district court held that the Tax Court's judgment collaterally estopped the debtor from litigating the issue of fraud, and that the Tax Court's findings of fraud excepted the IRS's claim from discharge pursuant to 11 U.S.C. § 523(a)(1)(C). *Id.* The court of appeals decided, however, that the Tax Court judgment had no collateral estoppel effect. *Id.* at 640. In reaching that decision, the court of appeals reasoned that Rule 90 admissions are analogous to default judgments and stipulated facts, which generally do not have collateral estoppel effect. *Id.* at 640 n. 1.[12] The court also analogized a Rule 90 admission to consent judgments on a factual issue which have no collateral estoppel effect unless the parties manifest their intent to use the consent judgment in a subsequent proceeding. *Cassidy*, 892 F.2d at 640 n. 1 (citing *Klingman v. Levinson*, 831 F.2d 1292 (7th Cir.1987)). The court of appeals thus concluded that the Tax Court judgment did not collaterally estop litigation on the fraud issue.

We believe the Virginia courts would follow the rationale of *Cassidy* for two reasons. First, as the court in *Cassidy* indicated, default judgments are analogous to judgments based solely on facts that the courts have deemed admitted. As noted earlier, the Supreme Court of Virginia has indicated that default judgments lack collateral estoppel effect. *See Snead*, 240 Va. at 402, 397 S.E.2d 849. One policy that may explain why some courts have not given collateral estoppel effect to default judgments is that

> [a]dversary litigation is one of the guarantees of a correct determination in a procedural system that depends upon party prosecution rather than affirmative judicial inquiry. Stripped of this guarantee, a judgment is an adjudication only in the sense that it disposes of the cause of action before the court. Such a judgment is not a reliable adjudication of any issue except for that case, and should not have collateral estoppel effect.

1B James W. Moore et al., *Moore's Federal Practice* ¶ 0.443[3] (2d ed. 1993). We believe this same policy applies to judgments based on facts that courts have deemed admitted pursuant to Rule 4:11(a).

■■■ Second, we observe that the rule governing requests for admission was designed to reduce the burden of litigation by eliminating undisputed facts and narrowing the issues for trial. *See General Accident Fire & Life Assur. Corp. v. Cohen*, 203 Va. 810, 813, 127 S.E.2d 399 (1962); Fed.R.Civ.P. 36 advisory committee's note; *see also TransiLift Equip., Ltd. v. Cunningham*, 234 Va. 84, 90, 360 S.E.2d 183 (1987) ("Rule 4:11 is virtually identical to Rule 36 of the Federal Rules of Civil Procedure."). Rule 4:11(b) encourages admissions, and thus reduces the burden of litigation, by limiting the effect of those admissions to the pending action only. *See* 4A Moore et al., *Moore's Federal Practice* ¶ 36.08, at 36–82 (2d ed. 1994) (discussing Fed.R.Civ.P. 36, which is equivalent to Virginia Rule 4:11). The policy of encouraging admissions applies equally to stipulations and

---

11.  Like Virginia Rule 4:11(b), Tax Court Rule 90(f) provides that "[a]ny admission made by a party under this Rule is for the purpose of the pending action only and is not an admission by such party for any other purpose, nor may it be used against such party in any other proceeding."

12.  *But see, e.g., Katahn Assocs., Inc. v. Wien (In re Wien)*, 155 B.R. 479, 485–86 (Bankr.N.D.Ill. 1993) (dealing with a judgment entered by a federal court, and declining to follow the line of cases that deny "collateral estoppel effect to default judgments, consent judgments, and uncontested summary judgments in all but a few cases"), *appeal decided on other grounds*, 29 F.3d 329 (7th Cir.1994); *Jones v. Wilson (In re Wilson)*, 72 B.R. 956, 959 (Bankr.M.D.Fla.1987) (indicating that default judgments have collateral estoppel effect).

consent judgments on a factual issue. *See Cassidy,* 892 F.2d at 640 n. 1; 1B Moore, *supra,* ¶ 0.444[4], at 817 n. 4. For these reasons, we conclude that the Virginia courts would follow *Cassidy,* and would not give collateral estoppel effect to judgments based solely on a Rule 4:11 admission.[13]

In support of their position that the issue of intoxication was actually litigated, Hildebrand and State Farm cite *Slagle v. Slagle,* 11 Va.App. 341, 398 S.E.2d 346 (1990), a decision of the Virginia Court of Appeals. At issue in *Slagle* was the collateral estoppel effect of a divorce decree that awarded child custody to the wife and required the husband to make child support payments. Following entry of the divorce decree, the husband petitioned the court to abate his child support obligations because a report had determined that he was not the biological father of the child. *Id.* at 347. In response, the wife asserted that the divorce decree estopped the husband from raising the issue of paternity. The Virginia Court of Appeals agreed that the divorce decree foreclosed litigation on the paternity issue. With only the divorce decree and a partial record of the subsequent paternity action before it, the court of appeals concluded that the issue of paternity had been actually litigated in the prior di-

vorce proceedings. *Id.* at 348. The Virginia Court of Appeals reasoned that a finding by the trial court that the husband was the child's father was implicit in the divorce decree provisions that awarded child custody to the wife and required the husband to pay child support. *Id.*

*Slagle* suggests that an issue is actually litigated when a court makes a finding—even an implicit finding—with respect to that issue. Yet *Slagle* is distinguishable because nothing in that case suggests that the divorce decree was obtained by default or that the decree's entry was "in the nature of a default." In *Slagle,* the Virginia Court of Appeals had a very limited record before it, namely the divorce decree and a partial record of the subsequent paternity action. In contrast, the record here provides facts that dissuade us from concluding that the intoxication issue was actually litigated.[14] Based on the foregoing, we conclude that the intoxication issue was not actually litigated, so collateral estoppel does not attach.[15]

### B.

In support of her cross-motion for summary judgment, Kugler contends that judicial estoppel precludes Hildebrand and State Farm from asserting that Kugler was intoxi-

13. In response, Hildebrand and State Farm rely on *Jaffe v. Grant,* 793 F.2d 1182 (11th Cir.1986), *cert. denied,* 480 U.S. 931, 107 S.Ct. 1566, 94 L.Ed.2d 759 (1987). Yet *Jaffe* is inapposite here. In *Jaffe,* the Court of Appeals for the Eleventh Circuit gave res judicata (claim preclusion) effect to a state-court judgment that was supported by facts that were deemed admitted. *Id.* at 1187. Unlike the instant case, the court in *Jaffe* did not address collateral estoppel (issue preclusion). *See id.* at 1187–88. Furthermore, unlike collateral estoppel, res judicata ordinarily attaches to default judgments. *See, e.g., Tomai-Minogue v. State Farm Mut. Auto. Ins. Co.,* 770 F.2d 1228, 1233 n. 7 (4th Cir.1985). *But see Ruckdeschall v. Seibel,* 126 Va. 359, 380, 101 S.E. 425 (1919) ("It is settled in Virginia that a judgment by default does not bar the judgment debtor from thereafter setting up the defense of usury against the judgment when it is sought to be enforced in a court of equity.").

14. One decision of the Seventh Circuit Court of Appeals may harmonize the approaches taken in *Slagle* and *Snead, supra.* As the court of appeals explained:

> Usually an express finding in a valid final judgment is good enough [to satisfy the ele-

ments of collateral estoppel].... And it makes no difference whether such a finding was based on a complete failure of proof rather than on a weighing of competing proofs. *On the other hand,* a default judgment is not a proper basis for collateral estoppel.

*Grip-Pak, Inc. v. Illinois Tool Works, Inc.,* 694 F.2d 466, 469 (7th Cir.1982) (emphasis added and citations omitted), *cert. denied,* 461 U.S. 958, 103 S.Ct. 2430, 77 L.Ed.2d 1317 (1983). For the reasons we have already discussed, we believe the instant case falls closer to the "default judgment" end of the spectrum, so *Snead* is more applicable than *Slagle.*

15. Because collateral estoppel does not attach, we need not decide whether Kugler had a full and fair opportunity to litigate the intoxication issue. *See Allen v. McCurry,* 449 U.S. 90, 95 n. 7, 101 S.Ct. 411, 415 n. 7, 66 L.Ed.2d 308 (1980). In addition, we need not decide whether any exception to the full faith and credit statute would apply in this instance. *See Marrese v. American Academy of Orthopaedic Surgeons,* 470 U.S. 373, 382–83, 105 S.Ct. 1327, 1332–33, 84 L.Ed.2d 274 (1985).

cated at the time of the accident. As described earlier, Kugler testified at a deposition that both she and Hildebrand smoked marijuana and that Hildebrand knew Kugler smoked marijuana daily. Through a motion in limine, Hildebrand urged the state court to suppress Kugler's testimony, arguing that the statements were irrelevant. Kugler argues that Hildebrand's position on the motion in limine is inconsistent with the position that Kugler was driving while intoxicated.

Judicial estoppel may, in certain circumstances, preclude a party "from adopting a legal position in conflict with one earlier taken in the same or related litigation." *Allen v. Zurich Ins. Co.,* 667 F.2d 1162, 1166 (4th Cir.1982). The doctrine is designed to prevent litigants from "blowing hot and cold" or "playing fast and loose" with the judicial process. *Guinness PLC v. Ward,* 955 F.2d 875, 899 (4th Cir.1992); *Peugeot Motors, Inc. v. Eastern Auto Distribs., Inc.,* 892 F.2d 355, 356 n. 3 (4th Cir.1989), *cert. denied,* 497 U.S. 1005, 110 S.Ct. 3242, 111 L.Ed.2d 752 (1990); *United Va. Bank/Seaboard Nat'l v. B.F. Saul Real Estate Inv. Trust,* 641 F.2d 185, 190 (4th Cir.1981). Although the case at bar involves a state-court judgment, "federal law controls the application of judicial estoppel" because "it relates to protection of the integrity of the federal judicial process." *Guinness,* 955 F.2d at 899 n. 20 (quoting *Allen,* 667 F.2d at 1167 n. 4). According to the Court of Appeals for the Fourth Circuit, judicial estoppel "should be applied with caution." *Peugeot Motors,* 892 F.2d at 356 n. 3. Moreover, "[t]he circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation of principle, but they may be found where neither collateral estoppel nor equitable estoppel ... would apply." *Allen,* 667 F.2d at 1166–67 (citations omitted).

We decline to apply judicial estoppel to the case at bar for several reasons. First, the filing of the motion in limine did not necessarily signify that Hildebrand had abandoned her efforts to prove intoxication. The purpose of the motion in limine was to suppress evidence—namely evidence of Hildebrand's own use of marijuana—that could have been prejudicial to Hildebrand's case

before a jury. Furthermore, as the plaintiffs point out, the motion in limine sought to suppress statements that Kugler could have used to establish contributory negligence and assumption of the risk. Hildebrand still could have sought other evidence to establish intoxication in the state-court action, and the record reflects her unsuccessful attempt to serve the requests for admission upon Kugler. *See* Ex. 6, G & H. For this reason, we do not believe that Hildebrand's motion in limine contradicts the position taken by Hildebrand and State Farm in this proceeding.

Nor do we find that Hildebrand's reliance on the requests for admission contradicts our conclusion that the intoxication issue was not litigated. By the time Hildebrand attempted to serve the requests upon Kugler, Kugler could not be reached at her last-known address. As discussed above, there is no indication that Kugler received or responded to the requests, so the requests failed to put intoxication in issue. On these grounds, we conclude that Hildebrand and State Farm are not "playing fast and loose" with the judicial process. Accordingly, we decline to invoke judicial estoppel.

Kugler's next argument involves Va. Code § 19.2–294.1 (Michie 1990), which provides that "[w]henever any person is charged with a violation of § 18.2–266 [driving while intoxicated] ... and reckless driving growing out of the same act or acts and is convicted of one of these charges, the court shall dismiss the remaining charge." Relying on section 19.2–294.1, Kugler contends that she could never be convicted under Virginia law for driving while intoxicated at the time of the accident because the state court found her guilty of reckless driving. Consequently, her alleged intoxication was not "unlawful" under 11 U.S.C. § 523(a)(9).

Kugler's argument is novel, yet unavailing for several reasons. First, the Virginia statute that prohibits driving while intoxicated provides that "[i]t shall be *unlawful* for any person to drive or operate any motor vehicle ... (iii) while such person is under the influence of any narcotic drug or any other self-administered intoxicant ... to a degree

which impairs his ability to drive or operate any motor vehicle ... safely...." Va.Code § 18.2–266 (Michie Supp.1994) (emphasis added). Under the Virginia statute, the term "unlawful" is defined by the driver's conduct, namely driving while intoxicated. Unlawfulness does not depend on the ability of the Commonwealth of Virginia to punish Kugler for that conduct.

Furthermore, section 19.2–294.1 merely requires a court to dismiss the charge of driving while intoxicated if the defendant is convicted of reckless driving. The term "charge" connotes a criminal action. By its terms, section 19.2–294.1 does not preclude a civil action for compensatory relief based on Va.Code § 18.2–266,[16] or a suit under 11 U.S.C. § 523(a)(9) to render nondischargeable a claim for compensatory relief. Because Hildebrand and State Farm assert claims for compensation, we conclude that section 19.2–294.1 does not apply in the instant case. We therefore reject the arguments advanced by Kugler in support of her cross-motion for summary judgment.

## III.

We turn now to the documentary evidence presented to determine whether a genuine issue of material fact exists for trial. Accordingly, a brief review of the legal requirements for summary judgment is appropriate. Under Federal Rule of Civil Procedure 56, a court will grant a motion for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c), *incorporated in* Fed. R. Bankr.P. 7056. "In essence ... the inquiry [on a motion for summary judgment] ... is ... whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lob-*

*by, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202 (1986).

An issue of material fact is "genuine" when "the evidence is such that a reasonable [factfinder] could return a verdict for the nonmoving party." *Id.* at 248, 106 S.Ct. at 2510. On a motion for summary judgment, a court cannot, of course, weigh and balance the evidence as it would at trial, but must instead view all inferences drawn from the underlying facts "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 993, 8 L.Ed.2d 176 (1962)); *see also Charbonnages de France v. Smith,* 597 F.2d 406, 414 (4th Cir.1979). Although a court should not weigh the evidence, its "determination of whether a given factual dispute requires [a trial] must be guided by the substantive evidentiary standards that apply to the case." *Liberty Lobby,* 477 U.S. at 255, 106 S.Ct. at 2513. The standard of proof applicable to § 523(a) proceedings is "preponderance of the evidence." *See Grogan v. Garner,* 498 U.S. 279, 289, 111 S.Ct. 654, 661, 112 L.Ed.2d 755 (1991); *Combs v. Richardson,* 838 F.2d 112, 116 (4th Cir.1988).

Additionally, we emphasize that "simply because both [sides have] moved for summary judgment, it does not follow that summary judgment should be granted [to] one or the other." *LewRon Television, Inc. v. D.H. Overmyer Leasing Co.,* 401 F.2d 689, 692 (4th Cir.1968), *cert. denied,* 393 U.S. 1083, 89 S.Ct. 866, 21 L.Ed.2d 776 (1969). In cases, such as the instant one, where cross-motions are before the court, "[t]he court must rule on each party's motion on an individual and separate basis, determining, in each case, whether a judgment may be entered in accordance with the Rule 56 standard." 10A Charles A. Wright et al., *Federal Practice and Procedure* § 2720, at 23–24 (2d ed. 1983) (footnote omitted).

---

**16.** For example, a violation of section 18.2–266 could supply a basis for bringing a civil negligence action. *See Bogstad v. Hope,* 199 Va. 453, 459, 100 S.E.2d 745 (1957) (stating that driving a car while intoxicated violates the drunk driving statute, and that violation constitutes negligence).

We turn first to Kugler's cross-motion for summary judgment. Supporting her cross-motion are (1) the exhibits showing that she was convicted of reckless driving, not driving while intoxicated, and (2) the answer filed in this proceeding which denies that she was driving while intoxicated when the accident occurred. *See* Ex. A & B; Answer ¶ 5. Notwithstanding Kugler's answer and exhibits, we believe that the exhibits presented by Hildebrand and State Farm are such that a reasonable fact-finder could return a verdict in their favor. Particularly persuasive is the drug-urine screen report showing that, after the accident, Kugler tested positive for at least four illicit drugs. Ex. 2. Also persuasive is the transcript of Kugler's deposition in which she said that she "assumed" she smoked marijuana on the date of the accident because she used marijuana daily. Ex. 5, at 13–14, 23. We thus discern a genuine issue of material fact regarding intoxication.

But is the evidence presented by Hildebrand and State Farm so one-sided that they must prevail on their own motion for summary judgment? We do not believe so. Although Kugler tested positive for at least four illicit drugs, the drug-urine screen report does not disclose the quantity or the amount of drugs that were in her body around the time of the accident. Viewing the report in the light most favorable to Kugler, we conclude that the report leaves open the distinct possibility that the drug-urine screen detected only small traces of those drugs, which were not enough to impair her ability to operate her car safely. This brings us to Kugler's deposition transcript. At the deposition, Kugler testified that she did not recall whether she smoked marijuana on the date of the accident but "assumed" that she did because she used marijuana on a daily basis. Ex. 5, at 13–14, 23. Again, viewing the deposition statements in the light most favorable to Kugler, we find that the statements do not amount to an admission that she was intoxicated when the accident occurred. Given the foregoing discussion, together with Kugler's pleadings and exhibits, we again discern a genuine issue of fact regarding intoxication.

## IV.

For all these reasons, we conclude that a triable issue of intoxication exists with respect to both motions for summary judgment, and that the issue of intoxication is neither precluded by collateral estoppel, judicial estoppel, nor any other source of preclusion that we have addressed thus far. We therefore deny the motion of Hildebrand and State Farm for summary judgment and Kugler's cross-motion for summary judgment. An appropriate order will be entered.